UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PIUS BARIKPOA NWINEE, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 4:18 CV 1460 (JMB) |
| ST. LOUIS DEVELOPMENTAL DISABILITIES TREATMENT CENTERS, et al., | ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of defendants St. Louis Developmental Disabilities Treatment Centers and Melissa Theis for summary judgment, pursuant to Rule 56, Fed.R.Civ.P.  Plaintiff Pius Barikpoa Nwinee, who is self-represented, has filed a response in opposition and the issues are fully briefed.  The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

Plaintiff Pius Barikpoa Nwinee is employed by the defendant St. Louis Developmental Disabilities Treatment Centers.  He alleges that he was improperly denied a promotion in October 2017 in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.*, and the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. §§ 213.010 *et seq.*[1]  On July 17, 2018, he filed suit against defendants St. Louis Developmental Disabilities Treatment Centers and Melissa Theis,

---

[1] Plaintiff alleged that defendants violated his rights under Title VII and the "Missouri Civil Rights Act," which the Court construes as a claim under the MHRA.  Petition at ¶ 7 [Doc. # 7].

acting deputy director for the Division of Personnel, Office of Administration.[2] Defendants move for summary judgment, arguing that plaintiff failed to timely file his Title VII claim, failed to obtain a right–to–sue notice as required by the MHRA, and that he was denied promotion because he lacked the necessary qualifications.

## I. Background[3]

Plaintiff has been employed since June 2012 as a Developmental Assistant I by defendant St. Louis Developmental Disabilities Treatment Center, a facility operating under the purview of the Missouri Department of Health. SUMF at ¶¶ 1–2 [Doc. # 99]. He holds two bachelor's degrees in philosophy and criminology and criminal justice and a master's degree in legal studies. See Diplomas [Doc. # 102–3 at 1–5]. On October 13, 2017, plaintiff applied online for the position of Unit Program Supervisor and was automatically placed on the register[4] for that position based on a self–assessment of his experience and education. SUMF at ¶ 8. On November 1, 2017, plaintiff

---

[2] Ms. Theis was acting deputy director from October 24, 2017 to January 8, 2018. Melissa Theis Affidavit at ¶ 2 [Doc. # 99–1].

[3] Plaintiff has not filed, either with his opposition memorandum or his surreply, a response to defendants' Statement of Uncontroverted Material Facts (SUMF) as required by this district's local rules. See E.D. Mo. L.R. 4.01(E) ("Every memorandum in opposition [to a motion for summary judgment] must be accompanied by a document titled Response to Statement of Material Facts."). As a consequence, the facts set forth in defendants' SUMF are deemed admitted. Id. ("All matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.").

[4] A register is a list of applicants who have been found eligible for a specific job description. SUMF at ¶ 14. An individual's name must be included on the register to be considered for employment within a merit system agency. Id. Applicants are automatically placed on a register if their responses to a self–assessment indicate that they have the necessary qualifications. See Transcript Excerpts [Doc. # 102–1 at 9] (testimony by Mindy Allen, personnel analyst with the Missouri Office of Administration, Division of Personnel). The hiring agency completes an initial assessment of the applicants' education and experience. If the agency determines that an applicant is not eligible for the particular register, the agency does not have the authority to remove the applicant from the register but must refer the applicant to the Division of Personnel, where the applicant's eligibility is evaluated by a personnel analyst and the analyst's supervisor. Id. at 10. If it is determined that the applicant is not eligible for a particular register, the individual is removed from the register. The individual can appeal to the director of the Division of Personnel and then seek a hearing before the Administrative Hearing Commission. Id. at 11–12.

was asked by a personnel analyst with the Division of Personnel to provide more information regarding his work experience and education. SUMF at ¶ 9; Sarah Zayumba email ("[W]e are requesting additional information to help us determine your eligibility.") [Doc. # 99–2]; Application Note ("After reviewing applicant's information, it appear[s] that applicant does not meet the minimum qualification requirements.") [Doc. # 99–3]. On November 15, 2017, Sandra Baskette, a senior analyst with the Division of Personnel, informed plaintiff that his name was removed from the register for the Unit Program Supervisor because he did not have the required three years of "professional experience working with persons with mental retardation/developmental disabilities and/or mental illness." SUMF at ¶ 10; Baskette Memo (emphasis in original) [Doc. # 99–4]. Plaintiff appealed and, on December 14, 2017, Guy Krause, acting director of the Division of Personnel, upheld the decision. SUMF at ¶ 11. Noting that the Unit Program Supervisor position required three years of professional experience,[5] Mr. Krause explained that plaintiff's current position as a Developmental Assistant I was classified as a "direct care" and not "professional level" position. Krause Letter [Doc. # 99–5]. In response to plaintiff's assertion that his current job duties were the same as those performed by others in different classifications, Mr. Krause invited plaintiff to request reclassification of his position if he believed that was warranted. Id. Plaintiff then sought review from the Administrative Hearing Commission (AHC), which held a hearing on March 5, 2018. See Transcript Excerpts [Docs. # 99–7, 102–1]. He apparently terminated this proceeding before receiving a decision. See Pl. Opp. at 9 (stating he "withdrew the complaint" from the AHC "into state court on July 17, 2018" because he was "unsatisfied with defendants' unethical conduct.").

---

[5] The Unit Program Supervisor "supervise[s] a professional and direct care staff in the development and implementation of rehabilitation plans adapted to the needs of the clients, who are mentally handicapped." See Transcript Excerpts at 14.

3

On February 14, 2018, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and the Missouri Commission on Human Rights.[6] [Doc. # 99–6]. He wrote in his charge that, in the summer of 2017, he sent a letter to the "Division Director Department" regarding the "misuse of fund, time and disparate treatment in the workplace." He alleged that his October 2017 application for Unit Program Supervisor was denied "because of [his] national origin, Nigerian," and in retaliation for his earlier report of wrongdoing in the workplace. On February 27, 2018, the EEOC issued a right–to–sue notice, informing plaintiff that he had 90 days to file suit on any federal claims. SUMF at ¶ 20; EEOC Notice [Doc. # 99–6]. On March 16, 2018, the MCHR notified plaintiff that it had adopted the EEOC's decision and terminated its proceedings. SUMF at ¶ 20; MCHR Notice [Doc. # 99–6]. Plaintiff filed this action on July 17, 2018, in the circuit court of St. Louis County, asserting claims under Title VII and the MHRA. SUMF at ¶ 22. Defendants timely removed the matter to this Court, invoking federal–question jurisdiction under 28 U.S.C. § 1331.

Additional facts will be included as necessary to address the issues.

**II.    Legal Standard**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Rule 56, a party moving for summary judgment bears the burden of demonstrating that no genuine issue exists as to any material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

[6] Plaintiff also filed a charge of discrimination against the Missouri Office of Administration in June 2018. See Pl. Opp. at 19. On June 25, 2018, the EEOC issued a right–to–sue notice and, on July 11, 2018, the MHRA adopted the EEOC's findings and terminated its proceedings. See Doc. # 102–3 at 7 and 9. Plaintiff asks the Court to add the Office of Administration as a defendant in this case. Pl. Opp. at 19–20. The Court cannot address new claims or parties at this stage of the litigation.

4

party," and a fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Once the moving party discharges this burden, the non-moving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Anderson, 477 U.S. at 247. The non-moving party may not rest upon mere allegations or denials in the pleadings. Id. at 256. "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment. Id. at 248. The Court must construe all facts and evidence in the light most favorable to the non-movant, must refrain from making credibility determinations and weighing the evidence, and must draw all legitimate inferences in favor of the non-movant. Id. at 255.

**III.    Discussion**

  **A.    Compliance with Administrative Requirements**

Defendants argue that plaintiff failed to timely file his claims and, furthermore, that he never obtained a right–to–sue notice from the MHRC.

    1.    Title VII

The EEOC issued plaintiff's right–to–sue notice on February 27, 2018. Under Title VII, a plaintiff alleging discrimination or retaliation must file suit within ninety days of the issuance of a right–to–sue letter. 42 U.S.C. § 2000e–5(f)(1) (aggrieved party may file "civil action" within ninety days of receiving notice of agency action). Under rare circumstances, the time limits that apply to claims under Title VII can be saved by the doctrine of equitable tolling. See Hill v. John Chezik Imports, 869 F.2d 1122, 1123 (8th Cir. 1989) (Title VII's 90–day limitation period is subject to equitable tolling in appropriate cases). "As a general rule, equitable tolling is a remedy

5

reserved for circumstances that are truly beyond the control of the plaintiff." Shempert v. Harwich Chem. Corp., 151 F.3d 793, 797-98 (8th Cir. 1998) (internal quotations and citation omitted).

Here, plaintiff argues that any delay in filing his lawsuit should be forgiven because he was "compelled" to file a complaint with the AHC, which he did on February 16, 2018. Pl. Opp. at 9. Plaintiff cites no law to support his assertion that he was required to proceed before the AHC before filing suit on his Title VII claim. And, because he terminated the process before it was completed, he will not have satisfied any such condition if it truly exists. Alternatively, plaintiff suggests, without citing any support, that the filing of an action with the AHC constitutes a timely filing of a "civil action" within the requirements of § 2000e–5(f)(1). Id. The Court disagrees. "Civil action" refers to the initiation of litigation in a court, not the pursuit of review within a state administrative process. The Court agrees with defendants that plaintiff's Title VII claim was not timely filed, as required by 42 U.S.C. § 2000e–5(f)(1).

2.   The MHRA

In order to sue under the MHRA, a potential plaintiff first must file a complaint with the MCHR. Mo. Rev. Stat. § 213.075 ("As a jurisdictional condition precedent to filing a civil action under this chapter, any person claiming to be aggrieved by an unlawful discriminatory practice shall make, sign and file with the commission a verified complaint in writing."). The potential plaintiff then must obtain a right-to-sue letter from the MCHR before filing suit. Mo. Rev. Stat. § 213.111.1 ("If, after one hundred eighty days from the filing of a complaint alleging an unlawful discriminatory practice . . . the commission has not completed its administrative processing and the person aggrieved so requests in writing, the commission shall issue to the person claiming to be aggrieved a letter indicating his or her right to bring a civil action within ninety days of such notice against the respondent named in the complaint."). The complainant must file any civil

6

action against the person or entity allegedly committing the discrimination within 90 days of the date of the MCHR's letter, but in no event later than two years after the alleged discrimination occurred or was discovered. State, *ex rel*. Martin-Erb v. Missouri Comm'n on Human Rights, 77 S.W.3d 600, 604 (Mo. 2002).

Here, on March 16, 2018, the MCHR informed plaintiff that, "[b]ased on a review EEOC's investigation summary, the MCHR has decided to adopt the EEOC's findings and terminate its proceedings in this case." MCHR Notice [Doc. # 99–6]. The communication also stated, "If you are aggrieved by this decision of the MCHR, then you may appeal it by filing a petition under § 536.150[7] [Mo. Rev. Stat.] in state circuit court. Any such petition must be filed in the circuit court of Cole County." Id. This document does not constitute a right–to–sue notice under § 213.111 and there is no evidence that plaintiff ever asked the MCHR to issue such a notice. Thus, he has not satisfied a condition precedent to bringing suit on his claims under the MHRA. See Bonvicino v. Sec. Servs. of Am., L.L.C., No. 4:07CV78 JCH, 2007 WL 1138843, at *4 (E.D. Mo. Apr. 17, 2007) (dismissing MHRA claim where plaintiff received notice from MCHR that it was administratively closing plaintiff's case); Lehman v. United Parcel Serv., Inc., 443 F. Supp. 2d 1146, 1152 (W.D. Mo. 2006) (same).

In summary, the Court determines that plaintiff has not satisfied the administrative prerequisites for proceeding on his claims in this Court and defendants are entitled to summary

---

[7] Section 536.150 states:

> When any administrative officer . . . shall have rendered a decision which is not subject to administrative review, determining the legal rights, duties or privileges of any person, . . . and there is no other provision for judicial inquiry into or review of such decision, such decision may be reviewed by suit for injunction, certiorari, mandamus, prohibition or other appropriate action.

7

judgment on that basis. In the alternative, and as addressed below, defendants are entitled to summary judgment on the merits of plaintiff's claims.

### B.     The Merits of Plaintiff's Discrimination Claims

Plaintiff alleges that he was removed from the register for the Unit Program Supervisor position on the basis of his race and national origin and in retaliation for his 2017 accusation of misconduct in the workplace. He also asserts that he was subjected to a hostile environment, but he did not include such a claim in his charge of discrimination, nor is such a claim like or reasonably related to the reasonably related to the discrimination allegations in that charge. See Dorsey v. Pinnacle Automation Co., 278 F.3d 830, 838 (8th Cir. 2002) ("A plaintiff may seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge."). Accordingly, plaintiff has not exhausted his administrative remedies with respect to his hostile–environment claim and it will not be addressed.

To survive a motion for summary judgment under either Title VII or the MHRA, a plaintiff must show either direct evidence of a Title VII violation or create an inference of discrimination or retaliation under the McDonnell Douglas burden-shifting framework. Shirrell v. St. Francis Med. Ctr., 793 F.3d 881, 887 (8th Cir. 2015) (Title VII claim); Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P., 444 F.3d 961, 965 (8th Cir. 2006) (MHRA claim). Plaintiff argues that he has direct evidence of national–origin discrimination.

"Direct evidence provides a strong causal link between the alleged discriminatory bias and the adverse employment decision." Massey-Diez v. Univ. of Iowa Cmty. Med. Servs., Inc., 826 F.3d 1149, 1160 (8th Cir. 2016) (citation omitted). Direct evidence may be circumstantial if the inferred causal link is strong enough. Id. The bias, however, must be that of the decision maker and must relate to the decisional process. Id. Here, plaintiff relies on a statement by Michelle

8

Stach, the assistant superintendent of the St. Louis Developmental Disabilities Treatment Center, on November 20, 2017,[8] that plaintiff was not eligible for the Unit Program Supervisor position because he had not worked as a "habilitation officer" and he had an accent. Amended Complaint at ¶¶ 28, 30; see also Pl. Dep. at 91 (testifying that Michelle Stach told him he had an accent) [Doc. # 99–8 at 11]. There is no evidence in the record before this Court that Ms. Stach played any role in the decision to remove plaintiff from the register for the Unit Program Supervisor position. And, according to testimony before the AHC, Ms. Stach had no authority to remove plaintiff from the register. Thus, her comment — whether indicating bias or not — does not constitute direct evidence of improper discrimination.

The Court thus analyzes plaintiff's claims under the McDonnell Douglas burden–shifting framework, which requires the plaintiff to first carry the burden of making a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If the plaintiff meets this burden, the burden then shifts to the employer to articulate a legitimate, non-discriminatory or non-retaliatory reason for its decision. Id. at 802–03. If the employer meets its burden, the burden then shifts back to the plaintiff to show the employer's reason was pretextual. Id. at 804.

To establish a prima facie case of discrimination, a plaintiff must show: (1) he "is a member of a protected class," (2) he met his "employer's legitimate expectations," (3) he "suffered an adverse employment action," and (4) "the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently)." Carter v. Pulaski Cty. Special Sch. Dist., 956 F.3d 1055, 1058 (8th Cir. 2020) (addressing Title VII claim) (citation omitted); see also Lampley v. Missouri Comm'n on Human Rights, 570

---

[8] This comment occurred after the decision was made to remove plaintiff from the register.

9

S.W.3d 16, 24 (Mo. 2019) (addressing MHRA claim)).  When deciding a case under the MHRA, courts are guided by Missouri law and federal employment discrimination case law consistent with Missouri law.  Shirrell v. St. Francis Med. Ctr., 793 F.3d 881, 886 (8th Cir. 2015) (citing Daugherty v. City of Md. Heights, 231 S.W.3d 814, 818 (Mo.2007) (en banc)).

Defendants contend that plaintiff cannot establish the second element of his prima facie case because he did not meet the requirements for the Unit Program Supervisor position.  It is undisputed that the position required three years of "professional level" experience.  It is also undisputed that plaintiff's role as a Developmental Assistant I was not deemed to be "professional level."  Plaintiff argues that his educational accomplishments, in combination with his work experience, satisfied the three–year requirement.  According to testimony presented at the AHC hearing, education in certain fields can substitute for one year and time as a registered nurse can substitute for two years of the required experience.  Transcript Excerpts at 15.  Assuming for the purposes of the present dispute that plaintiff's education is in the designated fields, such education substitutes for no more than one year of experience and there is no evidence that he is a registered nurse.  Thus, the uncontroverted evidence establishes that plaintiff did not meet the requirements for the position.

Plaintiff's retaliation claim fares no better.  The claim is based on his contention that in 2017 he sent a letter to Valerie Huhn — an employee of the Department of Mental Health — in which he complained that he and other employees were getting paid leave time when they had not earned it.  SUMF at ¶ 3; Pl. Dep at 89–91.  He believes that he was removed from the register for the Unit Program Supervisor in retaliation for this complaint.  To establish a prima facie case of retaliation, plaintiff must show: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between his protected activity and the

adverse employment action.  Gipson v. Dassault Falcon Jet Corp, --- F.3d ---, 2020 WL 7510580, at *3 (8th Cir. Dec. 22, 2020).  Here, there is no evidence of a causal connection between plaintiff's letter to Valerie Huhn and the determination by employees in the Division of Personnel that plaintiff did not have the required experience for the Unit Program Supervisor position.

Finally, even if the Court assumes that plaintiff carried his burden of establishing a prima facie case, he presents no evidence to show that defendants' legitimate, nondiscriminatory reason for removing him from the register — his lack of the required experience — is a pretext for discrimination.[9]

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment [Doc. # 97] is **granted**.

A judgment in accordance with this Memorandum and Order will be separately entered.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 7th day of January, 2021.

---

[9] In his surreply, plaintiff argues that defendants routinely hired other people with similar experience without a degree, citing in support testimony from another employee of the St. Louis Developmental Disabilities Treatment Centers.  Surreply at 17–18 [Doc. # 107]; Shannon Childress Dep. [Doc. # 102–2].  In response to questions from plaintiff, Ms. Childress testified that she has held positions as "CAT, DA I, DA II, and DA III."  Id. at 6.  In this latter position she supervises a multi–ward facility.  She was also interviewed for a "Habilitation I" position, but did not get the position.  She does not have an associate, bachelor's, or masters degree.  Id. at 7–9.  To the extent that plaintiff suggests that Ms. Childress received more favorable treatment than he did, he presents no evidence that these positions required three years of professional experience or, further, that Ms. Childress lacked that experience.

11